UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARBEN QOSJA,

                              Petitioner,

                -v-

SAFETE KRASNIQI,

                              Respondent.

25-CV-2995 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Before the Court is Arben Qosja's petition for the return to England of E.Q., his minor child with Respondent Safete Krasniqi, brought pursuant to the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or the "Convention"), Oct. 25, 1980, 51 Fed. Reg. 10498, 19 I.L.M. 1501, and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001-9011.  (ECF No. 3.)  After the Court issued an Order to Show Cause requiring Krasniqi to keep E.Q. in the Southern District of New York, Krasniqi relocated E.Q. to Albania and, proceeding pro se, filed a series of motions, many of which seek dismissal on jurisdictional grounds.  Qosja subsequently filed a motion for contempt.  (ECF No. 20.)  For the reasons that follow, Krasniqi's motions to dismiss are denied, Krasniqi's remaining motions are denied, Qosja's motion for contempt is granted, and the case is stayed pending E.Q.'s return to the Southern District of New York.

## I.    Background

### A.    Factual Background

Krasniqi and Qosja are former spouses who share a ten-year-old child, E.Q.  (ECF No. 3 ¶¶ 1, 9.)  After the parties divorced on September 10, 2019, Krasniqi and E.Q. continued to live in London, where they had lived since July of 2017.  (*Id.* ¶ 9, 13, 16.)  At the start of the

COVID-19 pandemic, Krasniqi and E.Q. moved in with Qosja in Kent, England.  (*Id.* ¶ 17.)  Around that time, Krasniqi began expressing fear that COVID-19 was manufactured in the United Kingdom to harm her children and repeatedly ran away from home.  (*Id.* ¶ 18.)  On Krasniqi's urging, the family moved to Germany for two weeks, before relocating to Albania for approximately one year.  (*Id.* ¶¶ 21-22.)  Throughout this period, Krasniqi periodically ran away and was diagnosed with Delusion Disorders and Bipolar (one) Disorder with Psychotic Features.  (*Id.* ¶¶ 23-32.)  The family returned from Albania to England in September 2021, at which point E.Q. was enrolled in primary school.  (*Id.* ¶¶ 34-35.)  Krasniqi continued to run away, both to Albania and Germany, twice bringing E.Q. with her.  (*Id.* ¶¶ 38-44.)  From January 5, 2023, until February 21, 2025, E.Q. attended primary school in England.  (*Id.* ¶¶ 41, 45.)

In February 2025, Krasniqi and E.Q. traveled to Italy to visit a family friend.  (*Id.* ¶ 47.)  They did not return to England on the date of their return flight, scheduled for February 20, 2025.  (*Id.* ¶¶ 47-48.)  Instead, Krasniqi and E.Q. went to Madrid International Airport, flew to Portugal, and then traveled from Portugal to Queens, New York, eventually moving into an apartment in the Bronx.  (*Id.* ¶¶ 49-51, 56.)

On April 11, 2025, Qosja filed a petition for the return of E.Q. to England, pursuant to the Hague Convention and ICARA.  (*See generally* ECF No. 3.)  Qosja also filed a motion for a temporary restraining order.  (ECF No. 5.)  That same day, the Court issued an Order to Show Cause (the "Order to Show Cause" or the "Order") scheduling a hearing for April 18, 2025, and prohibiting Krasniqi from removing E.Q. from the Southern District of New York pending resolution of the petition.  (ECF No. 6.)  The Order also required Krasniqi to produce her and E.Q.'s passports.  (*Id.* at 2.)  Qosja served a copy of the Order on Krasniqi on April 14.  (ECF No. 7.)

On April 18, 2025, Qosja filed a letter notifying the Court that Krasniqi left New York with E.Q. for Albania on April 16.  (ECF No. 8.)  Qosja then made a series of filings, including a motion to dismiss (ECF No. 9), a letter seeking an extension and disputing various allegations in Qosja's petition (ECF No. 11), an affidavit alleging pervasive surveillance (ECF No. 12), a letter attaching various exhibits and moving to recuse the Court from further proceedings in the matter (ECF No. 16), and a letter supplementing the motion to recuse (ECF No. 17).[1]

On May 28, 2025, Qosja moved for contempt.  (ECF No. 20.)  Krasniqi then filed a flurry of motions for extensions, for recusal, to compel service, to strike Qosja's opposition to the motion to dismiss, to vacate the Court's show-cause order, and more.  (ECF Nos. 22-27.)  Qosja filed a letter taking no position on these motions.  (ECF No. 29.)  On June 6, 2025, the Court issued an order concluding that there was no basis for recusal.  (ECF No. 30.)  Krasniqi then filed another motion to dismiss (ECF No. 35) alongside various other filings (ECF Nos. 36-41).

On June 18, 2025, the Court held a telephonic conference.  Subsequently, Qosja filed a status update indicating that he believes the Court still has subject matter jurisdiction over the matter and asking the Court to proceed on the merits.  (ECF No. 43.)  Krasniqi continued to file additional motions, including three additional motions to dismiss.  (ECF Nos. 44-53.)

---

[1] In these filings, Krasniqi uses E.Q.'s name and attaches unredacted exhibits including E.Q.'s identification documents, his school records, and various photos of E.Q. and his classmates.  (*See generally, e.g.*, ECF No. 11; ECF No. 12; ECF No. 16-1 at 2-3; ECF No. 16-8 at 2; ECF No. 16-9; ECF No. 57 at 15.)  However, Federal Rule of Civil Procedure 5.2(a) requires that filings containing the name of any individual known to be a minor include only the minor's initials.  Fed. R. Civ. P. 5.2(a)(3).  Accordingly, the Clerk of Court is directed to limit electronic access to these documents (ECF Nos. 11, 12, 16-1 to 16-9) to a "case-participant only" basis.  Krasniqi must comply with Rule 5.2(a)(3) when submitting any documents in the future. To ensure that all sensitive information related to E.Q. is properly redacted, both parties are ordered to review the filings made on the docket and to notify the Court of any additional necessary redactions within fourteen days of the date of this order.

On September 16, 2025, pursuant to a Court order, Qosja filed a status update indicating that E.Q. remains in Albania and that no other Hague Convention proceedings concerning E.Q. are pending in any other jurisdiction. (ECF No. 56.) Qosja then filed a motion "for protective order and international human-rights oversight" that also served as a memorandum of law in support of her motion to dismiss for mootness and lack of personal jurisdiction. (ECF No. 57.)

## II.    Discussion

The Hague Convention "was designed to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." *Ozaltin v. Ozaltin*, 708 F.3d 355, 358-59 (2d Cir. 2013) (quotation marks omitted). "[T]he Convention provides for 'the prompt return of children wrongfully removed to or retained in any Contracting State.'" *Id.* at 359 (quoting Hague Convention, art. 1). "ICARA is designed to establish procedures for the implementation of the Convention in the United States." *Id.* at 360 (quotation marks omitted).

Before reaching the question of whether the Court should resolve the merits of Qosja's Hague Convention petition, the Court must first consider Krasniqi's arguments for dismissal of the petition. In doing so, the Court construes Krasniqi's pro se submissions "liberally" and "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (cleaned up).

### A.    Mootness

"[T]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up). "The case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial

and appellate." *Id.* (quotation marks omitted).  "There is thus no case or controversy, and a suit becomes moot, when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quotation marks omitted).

"Although the party alleging jurisdiction typically bears the burden of proving it, the party arguing that a case has become moot—here, [Krasniqi]—bears the burden with respect to mootness, and that burden 'is a heavy one.'" *Bartzik Rubio v. Morales Lopez*, No. 23-CV-1423, 2023 WL 8031322, at *1 (S.D.N.Y. Nov. 20, 2023) (citations omitted) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979)); *see also Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016).

Krasniqi's principal argument is that the case is moot because E.Q. is no longer in U.S. territory.  (*See, e.g.*, ECF No. 9 at 1; ECF No. 35 at 2.)  "[W]here there is no dispute as to a child's country of habitual residence *and* the child has returned to that country, courts generally dismiss as moot petitions brought pursuant to the Hague Convention." *Bartzik Rubio*, 2023 WL 8031322, at *2 (collecting cases).  However, "return does not render a case moot [where] there is a live dispute between the parties over where their child will be raised, and there is a possibility of effectual relief for the prevailing parent." *Chafin*, 568 U.S. at 180; *see also Hofmann v. Sender*, 716 F.3d 282, 290 (2d Cir. 2013).  Here, E.Q. has not been returned to England.  Instead, he has been brought to a third location—Albania.  As a result, Qosja continues to suffer the alleged harm that he suffered when E.Q. was removed from England.  Thus, "the [parties] continue to vigorously contest the question of where their [child] will be raised." *Chafin*, 568 U.S. at 173.

Krasniqi's argument, construed at its strongest, is that the case is moot because this Court lacks the authority to force non-U.S. citizens not located in the United States to return a child to

their state of habitual residence. (*See* ECF No. 35 at 2 ("No relief under ICARA is available.").) But that very argument was considered and rejected by the Supreme Court in *Chafin*. Although it is true that Albania could choose "to ignore a U.S. []return order, or decline to assist in enforcing it, this case would not be moot." *Chafin*, 568 U.S. at 174-75. "The U.S. courts continue to have personal jurisdiction over [Krasniqi], may command her to take action even outside the United States, and may back up any such command with sanctions." *Id.* at 175. Moreover, "[c]ourts often adjudicate disputes where the practical impact of any decision is not assured." *Id.* "A []return order may not result in the return of [E.Q.] to the United States, just as an order that an insolvent defendant pay $100 million may not make the plaintiff rich. But it cannot be said that the parties here have no 'concrete interest' in whether [Qosja] secures a []return order." *Id.* at 176. "However small that concrete interest may be due to potential difficulties in enforcement, it is not simply a matter of academic debate, and is enough to save this case from mootness." *Id.* (cleaned up).

To the extent that Krasniqi argues Qosja has "waived" jurisdiction by conceding in a previous letter that the Court lacks jurisdiction, that argument also fails. (*See* ECF No. 28 at 4; ECF No. 53 at 5.) Qosja later retracted that statement (ECF No. 43) and in any event, courts may choose to find a basis for subject matter jurisdiction even if no party invokes a theory for such jurisdiction. *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 208 (2d Cir. 2024).

In short, Krasniqi has not rendered this case moot by absconding to Albania with E.Q. A live controversy remains between the parties as to whether E.Q. should be returned to England, and this Court continues to have jurisdiction over that controversy.

### B.    Alternative Arguments for Dismissal

Krasniqi makes additional non-merits arguments for dismissal, all of which similarly fail. (*See* ECF Nos. 9, 35, 47, 52, 53, 57.)

6

First, she argues that the Court lacks subject matter jurisdiction under ICARA because E.Q. is located in Albania, and not in this district.  (ECF No. 53 at 5.)  ICARA provides that "[a]ny person seeking to initiate judicial proceedings under the Convention for the return of a child . . . may do so by commencing a civil action . . . in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction *in the place where the child is located at the time the petition is filed*."  22 U.S.C. § 9003(b) (emphasis added).  At the time Qosja filed his petition, E.Q. resided with Krasniqi in an apartment in the Bronx, within this Court's jurisdiction.  (ECF No. 3 ¶ 56.)  Accordingly, the Court properly had jurisdiction over the petition when it was filed, and for the reasons discussed above, that jurisdiction continues despite E.Q.'s relocation to Albania.

Krasniqi also argues that ICARA requires that the proper forum for any petition under the Convention is Albania.  (*See, e.g.*, ECF No. 57 at 10.)  This argument is allegedly based on a provision of ICARA that "mandates that when the child now resides in another Contracting State, the U.S. Central Authority must defer to the Central Authority of that State."  (*Id.*)  But Krasniqi cites in support an inapposite provision of ICARA, which concerns only the applicable burden of proof.  (*See Id.* (citing 22 U.S.C. § 9003(e)(2).)  In any event, Albania does not appear to be a partner to the Convention.  *See U.S. Hague Convention Treaty Partners*, State Dep't, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html [https://perma.cc/6UMN-8YV3].

Kranisqi also argues that the case should be dismissed because of fraud.  (*See* ECF No. 35 at 2; ECF No. 53 at 6-9.)  In particular, she alleges that Qosja's filings include inaccurate and outdated communications and material discrepancies and omissions related to whether E.Q. received schooling in Albania and other facts alleged in the petition.  (*See* ECF No. 9 at 2; ECF

No. 35 at 3; ECF No. 53 at 6-7.)  These largely conclusory allegations were all made in unsworn briefing, and do not warrant dismissal.  *See, e.g., Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088, 2016 WL 616386, at *17 (S.D.N.Y. Feb. 16, 2016) ("Plaintiff's unsworn allegations do not . . . constitute a factual showing of anything.").

Krasniqi additionally urges dismissal under the political question doctrine and pursuant to her application for protection under the Federal Witness Security Program ("WitSec").  (ECF No. 47; ECF No. 52.)  Krasniqi's allegations that "this dispute is deeply enmeshed in foreign-policy decisions and allegations of corruption by domestic and foreign intelligence entities" (ECF No. 52 at 1) are unsupported by the record, absent Krasniqi's unsworn and speculative allegations.  The Court further declines to entertain Krasniqi's request for it to "forward" her application to WitSec to the Attorney General.  (*Id.* at 3.)  The decision to place someone in witness protection pursuant to 18 U.S.C. § 3521 is a decision to be made by the Attorney General and is warranted only for those who are a witness or potential witness for the federal or state government in an official proceeding concerning an organized criminal activity or other serious offense.  18 U.S.C. § 3521(a)(1).  Krasniqi has not alleged that she is such a witness or will potentially be such a witness, or even that there is such a federal or state proceeding.

Even crediting Krasniqi's allegations of a multi-government conspiracy against her, they fail to support dismissal under the political question doctrine, which "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch."  *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  The central question in this case is whether Krasniqi wrongly removed E.Q. from his state of habitual residence in breach of Qosja's custody rights.  Resolution of that question does not

present the kind of political question that is "constitutional[ly] commit[ed] . . . to a coordinate political department" or that is "impossibl[e] [to] decid[e] without an initial policy determination of a kind clearly for nonjudicial discretion." *Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 331 (S.D.N.Y. 2013) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). Even if Krasniqi's decision was motivated in part because she believes E.Q. is in danger from various government entities, that does not mean a political question "is inextricable from the case at bar." *Id.* (quoting *Baker*, 369 U.S. at 217); *see id.* at 331-32 ("[C]ourts have denied motions to dismiss where discovery was necessary to determine whether a political question would inevitably arise."). Rather, the Court would be able to consider Krasniqi's arguments as to E.Q.'s safety without having to make any policy determination committed to a political branch of government.

Accordingly, Krasniqi's motions to dismiss at Docket Numbers 9, 35, 47, 52, 53, and 57 are denied.

### C.    Krasniqi's Remaining Motions

Krasniqi has moved to vacate the Court's order to show cause prohibiting her from removing E.Q. from the Southern District of New York, which this Court construes as a motion for reconsideration under Federal Rule of Civil Procedure 60(b). (ECF No. 27.) Krasniqi alleges that entry of the order violated due process because she was given only four business days to prepare for the ordered hearing. (*See id.* at 3; ECF No. 9 at 1; ECF No. 53 at 6.) However, "[d]ue process does not require the best notice, only reasonable notice." *Diagnostic Cardioline Monitoring of New York, Inc. v. Leavitt*, 171 F. App'x 374, 376 (2d Cir. 2006) (summary order). Krasniqi was given a week, which more than satisfies the reasonableness requirement. Indeed, under Federal Rule of Civil Procedure 65(b)(1), a court may even issue a temporary restraining order without written or oral notice to the adverse party if specific facts in a verified complaint clearly allege that immediate and irreparable injury will result before the adverse party can be

heard in opposition, and if the applicant's attorney certifies in writing the efforts that have been made to give notice and reasons why notice should not be required.  Fed. R. Civ. P. 65(b)(1).

Krasniqi further alleges that the petition lacks evidentiary support and includes false allegations, but she does so in unsworn briefing.  (ECF No. 27 at 3.)  Because these unsworn and cursory allegations do not justify vacatur of the Order to Show Cause, just as they do not warrant dismissal, Krasniqi's motion to vacate is denied.

Krasniqi also seeks (1) a protective order, (2) appointment of an international human rights monitor, (3) referral of the matter "to the United Nations Committee on the Rights of the woman, witness protection and Child," (4) referral of the matter to the European Court of Human Rights, (5) an order requiring U.K. and Albanian authorities to provide all documentation relating to a traffic accident involving Krasniqi, and (6) a stay of all further Hague Convention proceedings pending resolution of the protective order motion.  (ECF No. 57 at 8-9.)  These requests are denied on the basis that Krasniqi has failed to establish the existence of good cause necessitating such orders.  *See Kinlaw v. Walsh*, No. 10-CV-7539, 2011 WL 4620966, at *1 (S.D.N.Y. Oct. 4, 2011) (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)).  Krasniqi's allegations of government surveillance and conspiracies against her are speculative and do not establish the likelihood of a serious injury resulting in the absence of a protective order or related relief.

Likewise, Krasniqi's motion for a protective order permitting submission of "her imperfect contemporaneous notes of the April 18, 2025 hearing" (ECF No. 50 at 1) is denied.  As the Court explained in its order on July 23, 2025, parties may request transcripts prepared by a court reporter of any court proceedings using the directions on the following website: https://nysd.uscourts.gov/court-reporters.  (ECF No. 54.)

Following the Court's prior order denying Krasniqi's motion for recusal (ECF No. 30), Krasniqi filed a "request for clarification" as to why the recusal motion was denied. (ECF No. 39.) This request, and the outstanding motions for recusal, are denied. "To establish a basis for recusal, movants must overcome a presumption of impartiality, and the burden for doing so is substantial." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) (cleaned up), *objections overruled sub nom. Moore v. Publicis Groupe SA & MSL Grp.*, No. 11-CV-1279, 2012 WL 12528637 (S.D.N.Y. Nov. 8, 2012). "[A] showing of personal bias that would warrant recusal must ordinarily be based on 'extrajudicial conduct' and 'not conduct which arises in a judicial context.'" *Kaul v. Intercontinental Exch.*, No. 21-CV-6992, 2025 WL 2636589, at *5 n.1 (S.D.N.Y. Sept. 12, 2025) (quoting *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1141 (2d Cir. 1994)). As explained in the Court's prior order, the scheduling orders in this case—which have set deadlines and have afforded both parties additional time to file responses—are in conformity with conventional judicial practices and do not place the Court's impartiality in question.

On June 17, 2025, Krasniqi filed a motion to "quash" or clarify the Court's June 11, 2025 order scheduling a telephonic conference for June 18, 2025. (ECF No. 40.) Because the telephonic conference has already been held, Krasniqi's motion is denied as moot.

Krasniqi has also filed a motion "for authorization of alternative electronic service" to her email address. (ECF No. 22.) However, she filed that motion after already filing consent to receive electronic service to that same email address. (ECF No. 19.) Accordingly, the motion is denied as moot. Because Krasniqi has consented to service by email, her motion to compel service through paper filings (ECF No. 23) is denied. Krasniqi also filed a motion to vacate an order requiring her to stop sending email communications directly to chambers. (ECF No. 25;

11

*see* ECF No. 13.)  That order, contrary to Krasniqi's contentions, did not bar Krasniqi from emailing a separate email address, ProSe@nysd.uscourts.gov, to submit documents to this case. (ECF No. 13 (referencing https://www.nysd.uscourts.gov/prose).)  Accordingly, Krasniqi's motion to vacate the order at Docket Number 13 is denied.

Krasniqi's motion to strike Qosja's opposition to the motion to dismiss (ECF No. 24) is also denied.  That motion, which alleged improper service of the opposition, was filed before the opposition was filed.  (*Compare id.* (filed June 2, 2025) *with* ECF No. 36 (dated June 11, 2025).)

### D.    Qosja's Motion for Contempt

Qosja moves for contempt on the basis that Krasniqi violated this Court's Order to Show Cause by taking E.Q. to Albania.  (ECF No. 20.)

"A contempt order is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict."  *Kaul*, 2025 WL 2636589, at *4 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). "[T]o demonstrate contempt, 'a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'"  *Id.* (quoting *King*, 65 F.3d at 1058).  "Further, 'a civil contempt sanction must only be compensatory or coercive, and may not be punitive.'"  *Id.* (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014)).

Contrary to Krasniqi's contentions, Qosja has satisfied the requirements for demonstrating contempt.  First, the Order to Show Cause clearly and unambiguously prohibited Krasniqi from removing E.Q. from the Southern District of New York.  (ECF No. 6 at 2.)  "[T]he fact that English is [Krasniqi's] second language cannot excuse [her] . . . failure[] to comply" with the Order to Show Cause, especially given that her appearances at telephonic conferences

12

and her "filings demonstrate fluency in written English." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009).

Second, proof of noncompliance is clear and convincing. Indeed, it is undisputed that Krasniqi removed E.Q. from this Court's jurisdiction after being served with a copy of the Court's Order to Show Cause. Moreover, Qosja need not prove that Krasniqi's violation of the Court's order was willful to satisfy this factor. *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979) ("The fact that the prohibited act was done inadvertently or in good faith, however, does not preclude a citation for civil contempt, for the sanction is remedial in nature."). Krasniqi opposes the motion for contempt in part on the basis that the Court lacks personal jurisdiction over her due to improper service. (ECF No. 36 at 2.) However, Qosja filed an affidavit of service declaring that service of a copy of the Order to Show Cause was served personally to Krasniqi at her Bronx residence. (ECF No. 7.) Krasniqi's conclusory allegations of improper service—which do not allege how service actually occurred—do not overcome this sworn affidavit.

Third, Krasniqi has not diligently attempted to comply in a reasonable manner. Indeed, she has remained in Albania with E.Q. and has shown no intent to cure her violation of the Court's Order to Show Cause by returning him. (*See* ECF No. 35 at 2 ("Return is not possible or pending[.]").) Krasniqi argues that she diligently attempted to comply because she made multiple filings (ECF No. 36 at 3), but those filings are inapposite, as they do not address the fact that she defied the Court's order requiring her to keep E.Q. in the Southern District of New York.

Having found civil contempt, the Court next considers the issue of sanctions. "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics*

13

*Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004).  "To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance."  *Id.* (quotation marks omitted).  "Where the purpose of a civil sanction is to make a party comply with an order, the court must exercise its discretion in determining the proper sanction, considering the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'"  *Kaul*, 2025 WL 2636589, at *7 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947)).

At this juncture, and given Krasniqi's pro se status, the Court declines to exercise its discretion to order the imposition of sanctions.  Given Krasniqi's allegations of good faith, the Court offers her an opportunity to cure her violation of the Order to Show Cause.  Within thirty days of the date of this Order, Krasniqi is ordered to return E.Q. to the Southern District of New York and to file a letter on the docket confirming E.Q.'s return.  Krasniqi is warned that failure to do so may result in the imposition of sanctions, which may include monetary sanctions that increase each day Krasniqi continues to be in contempt and the award of attorney's fees and costs to Qosja.

### E.    Proceeding to the Merits

Because this Court has jurisdiction over the petition, Qosja urges it to reach the merits and adjudicate whether E.Q. should be returned to England.  (*See* ECF No. 43.)  Krasniqi urges denial of the petition on the basis that there has been no wrongful removal (*see, e.g.*, ECF No. 53 at 5), and that E.Q. was not a habitual resident of England at the time of removal (*see, e.g.*, ECF No. 57 at 7).

"[I]n order to prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a

different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention.  The petitioner must establish these requirements by a preponderance of the evidence." *Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005).  "Once a petitioner makes out a prima facie case that removal or retention was wrongful, the court must order the child's prompt return unless the respondent shows that one of the Convention's 'narrow' exceptions applies." *Tereshchenko v. Karimi*, 102 F.4th 111, 125 (2d Cir. 2024) (quoting 22 U.S.C. § 90001(a)(4)).  However, "[w]here the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child."  Hague Convention art. 12.

Allegations in the record support a finding that E.Q. habitually resided in England at the time of removal, that E.Q.'s removal to the United States breached Qosja's custody rights under English law, and that Qosja was exercising those rights at the time of removal.  (*See* ECF No. 3 ¶¶ 45, 64, 69-76; ECF No. 16-8 at 2.)  However, given the absence of witness testimony and a sparse evidentiary record, the Court declines to reach the merits of the petition at this juncture. Instead, pursuant to Article 12 of the Hague Convention, proceedings in this matter are stayed until E.Q. is returned to the Southern District of New York pursuant to this Court's contempt order.  Within five days of E.Q.'s return to the Southern District of New York, the parties shall file a status letter proposing dates for an expedited evidentiary hearing.

## III.    Conclusion

For the foregoing reasons, Krasniqi's motions to dismiss are DENIED, Krasniqi's remaining motions are DENIED, and Qosja's motion for contempt is GRANTED.

Krasniqi is ordered to return E.Q. to the Southern District of New York and to file a letter on the docket confirming E.Q.'s return within thirty days of the date of this order. Krasniqi is warned that failure to do so may result in the imposition of sanctions, which may include monetary sanctions that increase each day Krasniqi continues to be in contempt and the award of attorney's fees and costs to Qosja.

The case is stayed pending return of E.Q. to the Southern District of New York. Within five days of E.Q.'s return to the Southern District of New York, the parties are directed to file a status letter proposing dates for an expedited evidentiary hearing on the petition. To ensure that all sensitive information related to E.Q. is properly redacted, both parties are ordered to review the filings made on the docket and to notify the Court of any additional necessary redactions within fourteen days of the date of this order.

The Clerk of Court is directed to (1) close all open motions in this case, (2) limit electronic access to the documents at ECF Nos. 11, 12, and 16-1 to 16-9 to "case participants only," and (3) mark this case as STAYED.

SO ORDERED.

Dated: February 2, 2026
New York, New York

_____
J. PAUL OETKEN
United States District Judge

16